IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TOMMY LEE PAGE, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:15-cv-0465 |
| JEWEL STEELE *et al.*, | ) Chief Judge Sharp |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Tommy Lee Page, a state prisoner incarcerated at the Lois M. DeBerry Special Needs Facility ("DSNF") in Nashville, Tennessee, has filed a civil rights complaint under 42 U.S.C. § 1983 against the following defendants: Jewel Steele, Bruce Westbrooks, Derrick Schofield, Director of Medical Dr. Alexander, Dept. Director Clinical Service Dr. Ann Chester, Dr. Williams, Dr. Singleton, Dr. Bonnaire, Dr. Campbell, Dr. Burns, R/N Sherrell, P/A David Seahorn, R/N Tommy Foley, R/N Edie Black, Mike Christerson [Christensen], Unit Director Dr. Aboimgee [Abingambe], Unit Supervisor Sgt. Johnson, Unit Supervisor Sgt. Green, Health Service Administrator Marie Nance, Dr. Rochel, and Dept. Commissioner Jason Woodal [Woodall]. (ECF No. 1.) The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA").

**I.      Standard of Review**

Under the PLRA, the Court must conduct an initial review of any civil complaint brought by a prisoner if it is filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), seeks relief from government entities or officials, 28 U.S.C. § 1915A, or challenges the prisoner's conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [the PLRA] because the relevant statutory language tracks the

language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Nonetheless, in conducting the initial review, the Court must read the plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept the plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

## II.   Factual Allegations

In the "Statement of Claim" section of the form complaint, the plaintiff states only: "Loss of sight." (ECF No. 1, at 8.)

In the sixty pages of exhibits attached to the complaint, consisting largely of copies of the plaintiff's grievance forms and the prison authorities' responses,[1] the Court gleans that the plaintiff first went to the prison health center requesting emergency treatment on January 23, 2013, complaining about pain and hampered vision in his right eye. PA David Seahorn did not deem the condition to be an emergency and refused to treat the plaintiff. The plaintiff thereafter filed emergency grievance and filled out a sick call request form. The plaintiff saw PA Seahorn the next day, on January 24, 2013. Seahorn referred him to Dr. Burns, who made arrangements for the plaintiff to see an eye specialist at Meharry Medical Center on January 25, 2013. According to the plaintiff, this specialist diagnosed the problem as "Diabetic eye" and instructed the plaintiff to stand on his head, but he did not provide any pain relief or other medication. The plaintiff states that he is not diabetic.

On his return to prison, medical was willing to provide the plaintiff with Lortabs but did nothing else to address his problem. The plaintiff's emergency grievance was denied initially and on appeal, on the basis that the committee members believed the plaintiff was receiving adequate treatment. Warden Steele and Deputy Commissioner Woodal [sic] concurred with this response.

---

[1] The first page of the attachment is a drawing of an eye from two different angles, and the plaintiff's statement, "I'm not a lawyer and I can't see. That is the purposes of this drawing, also the suit." (ECF No. 101, at 1.)

The plaintiff continued filing grievances, seeking a second opinion and further treatment for his eye. He finally was approved to see a second specialist, Dr. Singleton, on April 30, 2013. The plaintiff disagreed with Dr. Singleton's diagnosis and treatment plan, and he continued filing grievances about the adequacy of the care he was receiving. He specifically wanted to see a Dr. Arrondale, who had apparently treated the plaintiff prior to his incarceration. The plaintiff continued to insist that he was in pain and in fear of permanently and completely losing the vision in his right eye. In grievances submitted in May 2013, the plaintiff alleged that "two white guys" had had "their sight issues checked into" and were receiving treatment and that the prison authorities' failure to provide the plaintiff the treatment he believed he needed resulted from racial discrimination. The exhibits attached to the complaint do not reveal any continuing controversy regarding the treatment of the plaintiff's eye in 2013.

The remaining documents in the file are dated June 2014. In these, the plaintiff asserted that he was seeking a second opinion from an ophthalmologist who is not at Meharry Medical Center, because his cataracts were getting worse. He asserted that this was an ADA issue. (ECF No. 1-1, at 39.) A memo from Tammy Farley, Assistant Health Services Administrator, to Chris Brun, Grievance Chairperson, dated June 17, 2014, notes that the plaintiff had been evaluated by ophthalmologist Dr. Singleton at Meharry on April 17, 2014 and that the treatment plan recommended by Dr. Singleton had been implemented by the medical team at DSNF. (ECF No. 1-1, at 42.) A grievance hearing was conducted on June 24, 2014, the result of which was to uphold the denial of the grievance and the plaintiff's request for another expert's opinion.

Thereafter, the plaintiff filed two reports with the State of Tennessee Department of Health Office of Investigations, alleging that the Assistant Health Services Administrator and other officials at DSNF were "passing the buck" rather than helping him deal with his eye problem. (ECF No. 1-1, at 54.) The plaintiff stated that he disagreed with Dr. Singleton's assessment of his problem, because "another DOCTOR told patient Tommy Page before 2011 there is something to give his sight back to him or be able to see better." (ECF No. 1-1, at 55.)

**III.     Discussion**

The plaintiff seeks to bring suit under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who,

acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

The plaintiff's claims of constitutional violations are based on the alleged failure by prison officials and medical personnel to provide adequate medical care. The Eighth Amendment, by its terms, prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its application by the courts, the Eighth Amendment has been specifically construed to prohibit the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion). The amendment imposes affirmative duties on prison officials to "assume some responsibility for [each prisoner's] safety and general well-being," and to "provide for his basic human needs," including medical care. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989).

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court concluded that, although the accidental or inadvertent failure to provide adequate medical care to a prisoner would not violate the Eighth Amendment, "deliberate indifference to the serious medical needs of prisoners" violates the Eighth Amendment, because it constitutes the "unnecessary and wanton infliction of pain" contrary to contemporary standards of decency. *Id.* at 104. Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation, but the Supreme Court has clarified that the question of whether a prisoner's claim based on prison officials' failure to provide adequate medical care involves both a subjective and an objective component: The objective prong asks whether the harm inflicted by the conduct is sufficiently "serious" to warrant Eighth Amendment protection. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). The Sixth Circuit has defined a "serious medical need" as "either one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 570 (6th Cir. 2013) (quotation marks and citations omitted). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

To establish the subjective component of an Eighth Amendment *Estelle* violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir.1976). A defendant's state of mind is sufficiently culpable to satisfy the subjective component of an Eighth Amendment claim when it amounts to a reckless disregard of a substantial risk of serious harm; behavior that is merely negligent will not suffice. *Farmer*, 511 U.S. at 835–36. Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Thus, when a prisoner has received some medical attention but disputes the adequacy of that treatment, the federal courts are generally reluctant to second-guess the medical judgments of prison officials and thus to constitutionalize claims which sound in state tort law. *Westlake*, 537 F.2d at 860 n.5, *cited in Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011).

The complaint in the case at bar does not contain any factual allegations whatsoever to support the plaintiff's claim of deliberate indifference. The documents attached to the complaint make it clear that the plaintiff has not been the victim of deliberate indifference to his serious medical needs. Instead, the plaintiff here has a difference of opinion with prison authorities regarding the adequacy and course of his treatment. The plaintiff has seen ophthalmic specialists several times since 2013. Most recently, according to the grievances, the plaintiff saw Dr. Singleton at Meharry, but the plaintiff disputes Dr.

Singleton's diagnosis and recommended treatment and seeks another opinion from an ophthalmic specialist who is not associated with Meharry. The law in this circuit, however, is clear that "a difference of opinion between [a prisoner] and the prison health care providers and a dispute over the adequacy of [a prisoner's] treatment . . . does not amount to an Eighth Amendment claim." *Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002).

Because the allegations in the plaintiff's grievances fail to give rise to a possible inference that the plaintiff has been the victim of deliberate indifference to his serious medical needs, the complaint must be dismissed.

An appropriate order is filed herewith.

*/s/ Kevin H. Sharp*
KEVIN H. SHARP
Chief Judge
United States District Court